## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JUSTIN JOHNSON, <br><br> Plaintiff, <br><br> v. <br><br> SALT LAKE CITY SCHOOL DISTRICT; TIFFANY SANDBERG; MELISSA FORD; MICHAEL NEMELKA; KATHERINE KENNEDY; NATE SALAZAR; SAMUEL HANSON; and KRISTI SWETT, <br><br> Defendants. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Case No. 2:19-cv-00743-JNP <br><br> District Judge Jill N. Parrish |

## INTRODUCTION

Before the court is Defendants' Motion for Judgment on the Pleadings. Justin Johnson ("Plaintiff" or "Johnson") has brought hostile work environment and retaliation claims against Defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq*. ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626 *et. seq.* ("ADEA"). The individual Defendants, Tiffany Sandberg, Melissa Ford, Michael Nemelka, Katherine Kennedy, Nate Salazar, Samuel Hanson, and Kristi Swett, move to dismiss the claims against them as unnecessary and superfluous. Salt Lake City School District (the "School District" or "District") moves to dismiss the claims against it under Federal Rule of Procedure 12(c). For the reasons to follow, the court GRANTS in part and DENIES in part Defendants' Motion.

## FACTUAL BACKGROUND

### I.     Johnson's Employment

Johnson was employed by the School District as a groundskeeper beginning in December 2015. He reached "career status" in July 2016. In March 2017, he was named Interim Lead Groundskeeper, and in October 2017, the "interim" label was removed, making him Lead Groundskeeper. Until June 2017, Burt Still ("Still") was Johnson's direct supervisor, after which time Chris Miller ("Miller") was Johnson's direct supervisor. Miller's supervisor was Curtis Barnett ("Barnett").

Johnson regularly met with Barnett to discuss the work performance of the groundskeeping crews. During these meetings, Barnett requested that Johnson provide reasons to "write up" two other employees, Ray Seerles ("Seerles") and Gus Bablous ("Bablous"). Both were over the age of 40 and nearing retirement. Barnett indicated that Seerles and Bablous were "too old and slow and that he wanted to get rid of them." ECF No. 2 ¶ 19. Johnson told Barnett he disagreed with this assessment.

Johnson told his direct supervisor at the time, Still, about Barnett's request. Still informed Johnson that Barnett was also pressuring him to write up Seerles and Bablous. When Miller became Johnson's direct supervisor, he likewise instructed Johnson to write up Seerles and Bablous and informed Johnson that this instruction came from Barnett. Johnson told Miller he disagreed with targeting Seerles and Bablous.

Nonetheless, Miller continued to pressure Johnson to give reasons to discipline Seerles and Bablous through the fall and early winter of 2017. Miller's pressure was "constant" and always aimed at Seerles and Bablous, never at other employees. In January or early February 2018, Miller

ordered Johnson to provide reasons to write up Seerles and Bablous or Johnson would be subject to discipline. Johnson refused Miller's demand.

Around the same time, in late January 2018, Johnson and a female co-worker, Chay Olsen ("Olsen"), were clocking out. As they were clocking out, Barnett walked by and remarked to Olsen that he had been watching her all day on the security cameras. Once Johnson and Olsen were outside, Olsen told Johnson that Barnett's comment was "creepy." A short time later, on February 5, 2018, Olsen was visibly upset, to the point of crying, about Barnett's comment. She told Johnson that knowing Barnett was watching her all day made her uncomfortable. Johnson agreed that Barnett's comment was inappropriate, and he suggested that she speak to Human Resources ("H.R."). Johnson decided, however, to meet with H.R. himself, in order to discuss Barnett's previous request to fabricate reasons to discipline Seerles and Bablous, in addition to Barnett's inappropriate comment to Olsen.

Shortly thereafter, Johnson called H.R. Specialist Amy O'Connor ("O'Connor"). He expressed his concerns about Barnett, and O'Connor scheduled a meeting on February 15, 2018 to discuss Johnson's concerns in more depth. She indicated that Johnson's complaints would be kept confidential until "an investigation could be conducted." Shortly after this call, on February 12, 2018, Johnson received a letter indicating that he was "no longer a career status employee" and had been reduced to "provisional status" as of October 16, 2017. The letter was dated February 6, 2018. Johnson decided to contact Sam Mills, his representative with the Utah Public Employees Association, to request that he attend the upcoming meeting with O'Connor.

O'Connor postponed the meeting at least three times. On March 5, 2018, Johnson received a written reprimand from Miller. Johnson then demanded a meeting with O'Connor, which took place on March 8, 2018. He raised his concerns about Barnett's comments to Olsen and Barnett's

targeting of older employees for termination. O'Connor indicated that she would speak to Barnett but did not indicate that she would conduct an investigation. Johnson's direct supervisor, Miller, was aware that Johnson had met with O'Connor, as Johnson had informed him the about the meeting.

Johnson scheduled another meeting with O'Connor for April 5, 2018 in order to discuss his concerns about retaliation. O'Connor postponed this meeting as well, but shortly after the date on which the meeting would have been held, one of Johnson's coworkers called Johnson to give him a "heads up" that the coworker "had the impression that Barnett wanted to terminate" Johnson. ECF No. 2 ¶ 54.

On April 16, 2018, Johnson received a second reprimand letter, dated April 3, 2018. Johnson eventually met with O'Connor again on April 26, 2018. On April 30, 2018, he received a letter from Ricardo Zubiate ("Zubiate") indicating that his contract would not be renewed. His employment under the contract was set to end on June 30, 2018. Johnson alleges that the non-renewal of his contract violated School District policy.

After receiving the letter from Zubiate, Johnson filed an internal complaint with the District on May 11, 2018, alleging retaliation. After filing the complaint, Johnson had several contacts with the director of H.R. for the District, Brian Garritson ("Garritson"). Johnson alleges that on at least two of these occasions, Garritson behaved aggressively and belligerently toward him. In anticipation of his June 30 termination date, Johnson resigned from his position on June 20, 2018.

II.    **EEOC Charge**

After failing to hear from the School District for some time, Johnson filed a charge with the Equal Employment Opportunity Commission ("EEOC") on August 7, 2018. *See* ECF No. 26-1. He filled out and submitted EEOC Form 5, which includes boxes one may check to indicate the

4

nature of the discrimination. Johnson checked only the "Retaliation" box. The form also contains

a space for complainants to set forth their allegations. Because the allegations in the charge are

critical to this Motion, the court includes them verbatim here:

> I was employed with the above named employer from the period of December 2016 until June 20, 2018. My last position was Lead Groundskeeper.
>
> I believe I was subjected to disciplinary action and subsequently terminated from my position because I refused to discipline older workers who were performing their jobs satisfactory and for reporting inappropriate sexual comment made by my supervisor's boss to a female employee.
>
> On about March 2018, Chris Miller, Grounds Supervisor approached me and informed me that I needed to write up the older guys on my team and when I did not agree to this I was told I would be the one to get into trouble.
>
> On about March 2018, Curtis Barnett, Supervisor of Miller told Chay Olsen (Female) that he had watched her running around all day on camera. Ms. Olsen informed me that she was uncomfortable with the comment. Following a staff meeting when it was commented by Miller that he watches them on the camera all day, Olsen again became upset.
>
> I brought this issue, along with the issues of being told to discipline the older employees to the attention of human resources on about April 26, 2018.
>
> I was subjected to discipline and my contract was not renewed based upon this discipline from Miller for refusing his directive to discipline the older workers and for complaining to human resources. Furthermore, Miller had indicated to me that he was pissed off that individuals were going to human resources and that he was being thrown under the bus.
>
> I believe I was discriminated against and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

ECF No. 26-1 at 2–3.

The School District responded to the EEOC complaint on September 12, 2018. The Department of Justice ("D.O.J.") issued Johnson a "right-to-sue" letter on July 30, 2019. The letter indicated that because over 180 days had passed since his filing with the EEOC, and because the D.O.J. had not filed suit, Johnson had the right to "institute a civil action under Title VII of the Civil Rights Act of 1964 . . . against the [School District]." ECF No. 2-1 at 1.

Johnson filed suit, alleging that the District created a hostile work environment and retaliated against him for engaging in protected opposition to discrimination under Title VII and the ADEA.

## DISCUSSION

### I.      Claims Against Individual Defendants

In his Complaint, Johnson brought claims against all of the members of the school board, writing that each "is sued as an individual and in his [or her] official capacity." ECF No. 2 at 2–3. Defendants respond that claims against individuals in their personal capacities under Title VII and the ADA are inappropriate. Likewise, they argue that where the employer is named as a defendant in a Title VII claim, it is inappropriate to name employees as defendants in their official capacities. For these reasons, Defendants argue that the claims against the individual defendants should be dismissed. Johnson responds that because the School Board members would be responsible for implementing any equitable relief that this court may order against the School District, it is proper to leave them as defendants. He also notes that he is seeking only equitable relief from them, not money damages. The court agrees with Defendants.

In Johnson's Reply brief, he clarifies that, despite potentially ambiguous language in the Complaint, he is only suing the school board members in their official capacities Thus, the court need only address Defendants' argument that the official-capacity claims should be dismissed.

6

In *Lewis v. Four B Corp.*, 211 F. App'x 663, 665 n.2 (10th Cir. 2005), the Tenth Circuit, in dismissing claims against individual employees in a Title VII suit, reasoned that "supervisors may be named in their official capacity and/or as alter egos of the employer, but just as a means to sue the employer . . . , and this procedural mechanism is superfluous where, as here, the employer is already subject to suit directly in its own name." This court has previously dismissed official-capacity claims against individual employees in a Title VII where the employer was also named as a defendant. In *Drescher v. Clinton City*, No. 1:15-CV-32-DAK, 2017 WL 963199, at *4 (D. Utah Mar. 10, 2017), this court concluded that because Clinton City, the Plaintiff's employer, had been named as a defendant, the presence of individual employees as defendants was "superfluous, at best, and inappropriate, at worst." The court reiterated that in Title VII cases, "the employer is the proper [d]efendant . . . ." *Id.*

Johnson cites three cases to support his argument that it is proper to name the school board members as defendants. First, Johnson cites *Ambus v. Granite Bd. of Educ.*, 995 F.2d 992, 996 (10th Cir. 1993), for the proposition that school boards "may sue and be sued." While this may be true, the defendant in that case was the school board, not its individual members; it is therefore inapposite to deciding the issue in this case. The other two cases, *Bertot v. School District Number 1, Albany County, Wyoming*, 613 F.2d 245 (10th Cir. 1979), and *McGhee v. Draper*, 639 F.2d 639 (10th Cir. 1981), predate the Tenth Circuit's decision in *Lewis*. In addition, those cases involved Section 1983 claims; this case does not. Further, even if school board members will be, as a practical matter, responsible for implementing any equitable relief ordered by the court, that fact does not necessitate their presence as defendants. Whoever is on the school board at the time any relief may be granted will be responsible for implementing it, whether or not they are named as defendants. The court therefore agrees that the presence of the individual defendants would be

7

"superfluous, at best, and inappropriate, at worst." *Drescher*, 2017 WL 963199, at *4. The claims against the individual defendants are therefore dismissed.

## II.      Hostile Workplace Claims

Johnson has brought hostile work environment claims against the School District under Title VII and the ADEA. The School District has moved to dismiss these claims, arguing that Johnson did not plead sufficient facts to support them. Johnson has neither addressed nor opposed the motion to dismiss the hostile work environment claims. The court therefore considers Johnson to have conceded this argument and dismisses the Title VII and ADEA hostile work environment claims. *See Cobley v. Klinger*, 176 F.3d 488 (table), 1999 WL 238871 (10th Cir. 1999) ("Failure to oppose a motion to dismiss within the proper time period constitutes a waiver of objection by the party not complying and a confession of matters raised in his opponent's pleadings.").

## III.     Retaliation Claims

Johnson alleges that the School District retaliated against him for engaging in protected opposition to discrimination in violation of the ADEA and Title VII.

### A.       ADEA

The ADEA makes it unlawful for employers to discriminate against employees who oppose age discrimination. *See* 29 U.S.C. § 623(d). Johnson alleges that he refused to discriminate against two coworkers on account of their age. Specifically, he alleges that he refused his supervisors' requests to create pretexts to fire Seerles and Bablous, whom one supervisor had described as "too old and slow," ECF No. 2 ¶ 19, and that he took his concerns to H.R. Johnson alleges that, as a result, the School District removed his "career" status, twice reprimanded him in writing, and ultimately terminated his employment by failing to renew his contract.

The School District argues Johnson's ADEA claim should be dismissed for two reasons: 1) Johnson failed to exhaust his administrative remedies before bringing this action, and 2) Johnson has failed to plead facts sufficient to establish a prima facie case of discrimination.

> 1)      Exhaustion of Administrative Remedies

The ADEA provides that "no civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]." 29 U.S.C. 626(d)(1). "Compliance with this administrative exhaustion requirement . . . is a condition precedent to bringing suit." *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1176 (10th Cir. 2011) (citing *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1167–68 (10th Cir. 2007)).

To determine whether a plaintiff has exhausted administrative remedies, the court must first look to whether the plaintiff has filed a charge with the EEOC. *See Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007).  The court must then "determine the scope of the allegations raised in the EEOC charge because '[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.'" *Id.* at 1186 (quoting *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266 (10th Cir. 2005), *abrogated on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018)). The court construes liberally the allegations in the charge filed with the EEOC "[i]n an effort to effectuate the ADEA's stated purpose of prohibit[ing] arbitrary age discrimination in employment." *Foster v Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004) (citations and internal quotation marks omitted).

In analyzing the scope of the allegations in the charge, the Tenth Circuit has held that a plaintiff's "failure to mark a particular box [on the charging document] creates a presumption that the charging party is not asserting claims represented by that box." *Jones*, 502 F.3d at 1186

(citation omitted). "The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim." *Id.* Although the court must construe the claims of the charge liberally, "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Smith v. Cheyenne Ret. Inv'rs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (quoting *Jones*, 502 F.3d at 1186).

It should be noted that while the Tenth Circuit previously treated a plaintiff's failure to exhaust administrative remedies as a jurisdictional bar, it now treats a plaintiff's failure to exhaust administrative remedies as an affirmative defense that may be raised by the defendant. *See Lincoln*, 900 F.3d at 1185. But the distinction between a jurisdictional bar and an affirmative defense is material "only when the defendant has waived or forfeited the issue." *Smith*, 904 F.3d at 1164. Here, the School District has not waived or forfeited the defense, so the distinction is immaterial. Further, a court may dismiss a claim on the pleadings based on an affirmative defense "when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). Here, Defendant's affirmative defense depends on the contents of Johnson's EEOC charge. Because the charge is referenced in the complaint and central to Johnson's claim, the court considers the contents of the charge for the purpose of deciding this Rule 12(c) motion. *See BV Jordanelle, LLC v. Old Repub. Nat'l Title Ins. Co.*, 830 F.3d 1195, 1201 n.3 (10th Cir. 2016). Because the affirmative defense turns on the contents of the charge, which in turn is incorporated into the complaint, the court may decide the issue of dismissal on the pleadings based on the affirmative defense.[1]

---

[1] Johnson argues that the court should not consider the charge because it was not attached to the School District's motion or to the complaint. But the charge was referenced in the complaint, and the District only inadvertently failed to attach it to its motion, despite referencing it therein.

In the present action, the District does not dispute that Johnson filed a charge with the EEOC. But it argues that this suit is not within the scope of the allegations of the charge, and that Johnson has therefore not exhausted his administrative remedies. It argues that Johnson failed to check the "age" box on the charge form, *see* ECF No. 26-1 at 2, and that therefore a presumption is created that Johnson's ADEA claims are not covered by the charge. The district further argues that Johnson has failed to rebut this presumption because, while he did allege in the charge that he was told to discipline older workers, that allegation was "mere prelude" to his true complaint, which was discrimination and retaliation "in violation of Title VII . . . ."

The School District's arguments fail. First, Johnson does not allege that the District discriminated against him personally on account of his age—he alleges that the School District retaliated against him for refusing requests that he discriminate against older employees. Thus, his failure to check the "age" box does not create a presumption that his claims are not covered by the charge. He did, after all, check the "retaliation" box, and he has brought retaliation claims under both the ADEA and under Title VII.

Furthermore, even if the court did find such a presumption, Johnson surely rebutted it through the text of his allegations. He wrote "I believe I was subjected to disciplinary action and subsequently terminated from my position because I refused to discipline older workers who were performing their jobs satisfactory [sic] . . . ." ECF No. 26-1 at 2. While he ended the charge stating that he believed he was "discriminated against and retaliated against in violation of Title VII," failing to mention the ADEA, the court, construing the charge liberally, finds that the charge "contain[s] facts concerning the discriminatory and retaliatory actions underlying each claim." *Smith*, 904 F.3d at 1164 (quoting *Jones*, 502 F.3d at 1186). Indeed, "the text of the charge clearly sets forth the basis of the claim." *Jones* 502 F.3d at 1186. These allegations sufficed to "put [the

District] on notice of the existence and nature of the charges against them." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003) (internal quotation marks omitted) ("One of the central purposes of the employment discrimination charge is to put employers on notice of the existence and nature of the charges against them.").

The District makes one further argument in support of its contention that Johnson failed to exhaust his administrative remedies: His right-to-sue letter from the DOJ states that Johnson "ha[s] the right to institute a civil action under Title VII . . . against the above-named respondent." ECF No. 2-1 at 1. The District argues that because the letter mentions only Title VII and not the ADEA, Johnson is precluded from also bringing an action under the ADEA. But the plain language of the ADEA automatically allows claimants to file suit 60 days after a charge is filed with the EEOC. *See* 29 U.S.C. § 626(d)(1) ("No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]"). Thus, there would have been no reason for the DOJ to have mentioned Johnson's ADEA claim. By contrast, Title VII's terms dictate that the aggrieved party may not bring suit until after being notified by the EEOC that it is not taking action. *See* 42 U.S.C. § 2000e-5.[2] The court therefore concludes that the terms of the right-to-sue letter do not prevent Johnson from bringing this action—ADEA plaintiffs need not receive notice from the EEOC or DOJ before bringing their claims.

    2)    Failure to State a Claim

---

[2] Several U.S. District Courts have noted this distinction between a plaintiff's right to sue under the ADEA and his right to sue under Title VII. *See, e.g., Simon v. Mfrs. Tr. Co.*, 849 F. Supp 880, 884–85 (S.D.N.Y. 1994); *Adams v. Burlington N. R. Co.*, 838 F. Supp. 1461, 1466–69 (D. Kan. 1993); *Seiler v. Holt Co. of Texas*, No. Civ SA00CA0023FB, 2000 WL33348254, at *1–3 (W.D. Tex. May 19, 2000).

The School District alternatively moves to dismiss Johnson's ADEA retaliation claim on the grounds that he has failed to plead sufficient facts to support it. Specifically, it argues that Johnson's actions did not rise to the level of opposition but were rather just "general employment complaints." *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202 (10th Cir. 2008). It further argues that Johnson failed to allege that Zubiate, the person who decided not to renew Johnson's contract, knew about Johnson's allegedly protected opposition.

a)   Legal Standard

The District brings this motion under Rule 12(c) of the Federal Rules of Civil Procedure. Courts apply the standard for motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure to motions for judgment on the pleadings under Rule 12(c). *Brown v. Montoya*, 662 F.3d 1152, 1160 n.4 (10th Cir. 2011). Dismissal of a claim under Rule 12(b)(6) is appropriate when the plaintiff fails to state a claim upon which relief can be granted. When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). The complaint must allege more than labels or legal conclusion and its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

"To establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have

found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). "Protected opposition can range from filing formal charges to voicing informal complaints to superiors." *Hertz v. Luzenac America*, *Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) (citation omitted). "[N]o magic words are required," but "to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by the ADEA." *Hinds*, 523 F.3d at 1203. "[G]eneralized employment complaints" do not suffice. *Id.*

  i.  Protected Opposition to Discrimination

  Johnson alleges that he engaged in protected opposition to discrimination when he refused his supervisors' requests to invent pretexts to discipline or fire older employees and when he complained to Human Resources about the targeting of the older workers. The District argues that these were "generalized employment complaints" that did not rise to the level of protected opposition. It contends that "the Plaintiff has not alleged that he ever conveyed to SLCSD a concern that his supervisors were engaged in a practice made unlawful by the ADEA . . . ." ECF No. 22 at 27.

  The District's arguments fail. First, the "generalized employment complaints" in *Hinds* were an employee's complaints that he was retaliated against for "giving negative evaluations of managers" and that he was upset with an "evaluation labeling him 'high maintenance'" for complaining about internal office politics and management paradigms. *Hinds*, 523 F.3d at 1202–03. Nothing in those complaints mentioned or even alluded to age discrimination. Here, Johnson alleges that he requested the meeting with Human Resources specifically to discuss age discrimination: "Because of . . . Barnett's prior request to manufacture reasons to write up older

employees, Plaintiff decided to take these issues to H.R. himself." ECF No. 2 ¶ 32. He also alleges that in his initial meeting with O'Connor, he raised the issue of "Barnett's expressed desire to remove older employees from the workforce." *Id.* ¶¶ 43–45. These allegations are far more specific the "generalized employment complaints" in *Hinds*. Unlike the plaintiff in *Hinds*, who complained about office politics and retaliation in response to negative evaluations he gave, Johnson allegedly complained about being requested to manufacture reasons to terminate workers protected by the ADEA. Accepting these allegations as true, the court concludes that Johnson expressed a concern to the School District that it was engaged in unlawful age discrimination.

ii.     Materially Adverse Action

An action that a reasonable employee might find materially adverse is one that "well might have dissuaded [him] from making or supporting a charge of discrimination." *Argo*, 452 F.3d at 1202 n.2.   The School District does not dispute that failing to renew Johnson's contract was a materially adverse action. The written reprimands and change in Johnson's career status may also constitute materially adverse actions. *See Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998).

iii.     Causal Connection Between Protected Activity and Adverse Action

The School District argues that Johnson failed to allege that Zubiate, the individual who ultimately decided not to renew his contract, knew about Johnson's allegedly protected activity. And if Zubiate lacked knowledge of Johnson's protected activity, then his decision not to renew the contract could not have been prompted by them. The District also points out that the threat of discipline, made by Miller, and the first written reprimand both predated Johnson's first meeting with O'Connor, meaning that they likewise could not have been motivated by Johnson's protected activity.

15

The court is unpersuaded by these arguments. A court may infer a causal connection when there is a "close temporal proximity" between the protected activity and the adverse employment action. *See Argo*, 452 F.3d at 1202. The closer the adverse action "occurred to the protected activity, the more likely it will support a showing of causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). The Tenth Circuit has found that a one-and-a-half month period may, by itself, establish a rebuttable presumption of causation, *see Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994), but that a three-month period, standing alone, may not. *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).

Here, Johnson learned on April 30, 2018 that his contract would not be renewed. This was a mere four days after his second meeting with Human Resources on April 26 and barely over the month-and-half threshold from his first meeting on March 8. In addition, Johnson received his first written reprimand on March 5, not long after he first called O'Connor and informed her about the purpose of his requested meeting in early February. Johnson also received notice that he was reduced from "career" to "provisional" status, retroactive to October 2017, on February 12[3] shortly after telling O'Connor why he had requested the meeting. Johnson received the second written reprimand on April 16, just over a month after his first meeting and shortly after O'Connor postponed their second meeting, originally scheduled for April 5. Based on the close temporal proximity between the alleged protected activity and the alleged adverse acts, the court concludes that it may draw an inference of causation.

---

[3] While the notice was dated February 6, the Plaintiff alleges that it was not sent until February 12. Assuming this allegation is true, it is reasonable to infer, at this stage, that it was prepared after Johnson's early February call to O'Connor but was back-dated to pre-date the call. Indeed, it is odd that Johnson would first receive notice of an employment status change immediately after calling H.R. when the change in status had allegedly been effective for almost four months.

B.     Title VII

Johnson has also brought a retaliation claim under Title VII, which prohibits employer retaliation against an employee for opposing activity made unlawful under Title VII. *See* 42 U.S.C. § 2000e-3(a). Johnson alleges that the District retaliated against him for reporting Barnett's alleged comment to Olsen that he had been watching her on security cameras. The District moves to dismiss, arguing that Johnson's conduct did not amount to protected activity and that, even if it did, Johnson failed to allege that Zubiate knew about it before making his decision not to renew Johnson's employment contract. The court requested additional briefing on the issue of whether Johnson's belief that Barnett's conduct violated Title VII was reasonable. The School District argues that Johnson's belief was not reasonable because a single, isolated event, unless very serious, cannot give rise to a Title VII discrimination claim. Johnson responds that reasonableness must be viewed in light of the totality of the circumstances, and that it would be inappropriate to declare at the pleadings stage that Johnson's belief was unreasonable.

1)   Protected Opposition and Zubiate's Knowledge

The District's argument that Johnson failed to state a claim under Title VII is identical to its argument that he failed to state a claim under the ADEA: that Johnson was merely making generalized employment complaints and that he failed to allege that Zubiate knew about his allegedly protected opposition. These arguments fail for the reasons articulated above: Johnson specifically raised the issue of Barnett's comments to Olsen with H.R., meaning that his activity rose far beyond the level of the "generalized employment complaints" in *Hinds.* See *Hinds*, 523 F.3d at 1202–03. And the court may infer causation from the close temporal proximity of Johnson's opposition and the District's adverse employment actions.  *See Argo*, 452 F.3d at 1202.

2)   Reasonable, Good-Faith Belief

The District also argues that Johnson's report to H.R. about Barnett's comment to Olsen did not qualify as protected activity because no reasonable person would believe that the comment amounted to actionable sexual harassment. The Tenth Circuit has held that a Title VII retaliation claim may not survive if the claim is "based on an unreasonable good-faith belief that the underlying conduct violated Title VII." *Crumpacker v. Kansas Dept. of Human Res.*, 338 F. 3d 1163, 1171 (10th Cir. 2003) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001)). In other words, to constitute protected activity, a plaintiff's belief that an employer violated Title VII must be both reasonable and held in good faith. The Tenth Circuit has explained, however, that the reasonableness of a plaintiff's belief does not turn on whether the employer's underlying conduct actually violated Title VII. Rather, the Tenth Circuit has stated that "Title VII broadly protects an employee who reasonably believes he is opposing a practice made an unlawful practice by Title VII, whether or not an actual violation has occurred." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 926 (10th Cir. 2016) (citation omitted). *See also Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1015–16 (10th Cir. 2004) ("A plaintiff need not convince the jury that his employer had actually discriminated against him; he need only show that when he engaged in protected opposition, he had a reasonable good-faith belief that the opposed behavior was discriminatory." (citation omitted)).

The School District argues that in order to determine whether Johnson's belief that he was opposing unlawful activity was reasonable, this court must look to "the underlying substantive law." ECF No. 20 at 9 (citing *Clark v. Cache Valley Elec. Co.*, 573 F. App'x 693, 701 (10th Cir. 2014) (unreported). The School District asserts that the underlying substantive law precludes Title VII liability for a single isolated incident such as Barnett's comment. Because Barnett's comment

18

to Olsen could not form the basis of a Title VII discrimination suit, the School District argues that Barnett's belief that the behavior was unlawfully discriminatory was unreasonable. Johnson responds that even if the underlying conduct is not actionable under Title VII, an employee may nonetheless hold a reasonable belief that he is opposing unlawful conduct. The reasonableness determination, Johnson argues, is fact-intensive and context-specific and may not properly be decided at this stage in the proceedings. The court agrees with Johnson.

The School District points to *Clark County School District v. Breeden,* 532 U.S. 268, 271 (2001), in which the Supreme Court found that the employee's belief that she had opposed unlawful activity was unreasonable. The incident at issue in *Breeden* was a male supervisor's comment, in the presence of a female employee, in which he read aloud and joked about a lewd comment a job applicant had made to a co-worker.[4]  The Court explained that "sexual harassment is actionable under Title VII only if it is 'so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Breeden*, 532 U.S. at 270 (some internal quotation marks omitted) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998)). The Court went on to say that a "recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* at 271 (quoting *Faragher*, 524 U.S. at 788). *See also Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (quoting *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412–13 (10th Cir. 1987) (explaining that a "few isolated incidents" are insufficient to support a Title VII discrimination claim; "[i]nstead,

---

[4] The job applicant's comment was "I hear making love to you is like making love to the Grand Canyon." *Breeden*, 532 U.S. at 269.

'there must be a steady barrage of opprobrious [ ] comments.'"). The Supreme Court concluded as a matter of law that "[n]o reasonable person could have believed that the single incident recounted above violated Title VII's standard." *Breeden*, 532 U.S. at 271. And because no reasonable person could have believed that the supervisor's conduct violated Title VII, the plaintiff's retaliation claim for opposing that conduct could not survive. *Id.*

Johnson responds that while Barnett's comment may or may not be actionable under Title VII, the standard is not whether the underlying conduct actually violates Title VII; rather, it is whether a reasonable person in the Plaintiff's position could believe that he was opposing unlawful sexual harassment. *See Hansen*, 844 F.3d at 926; *Hertz*, 370 F.3d at 1015–16. Other District Courts have recognized that lay employees are not held to the same standard as those with legal training. *See, e.g., Duran v. LaFarge N. Am.*, 855 F. Supp. 2d 1243, 1250 (D. Colo. 2012) ("The Court finds that <u>it is reasonable for an individual without legal training</u> to believe that the use of a racial slur in the workplace, even if it was an isolated incident and made outside his presence, violates Title VII." (emphasis added)). Further, the Supreme Court has held that whether such a belief is reasonable depends on the totality of the circumstances:

> The [reasonableness] standard is phrased in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed (citation and internal quotation marks omitted).

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) (citation and internal quotation marks omitted). Other district courts have weighed various factors in determining whether an employee's belief is reasonable. *See, e.g., Davis v. Gardner Turfgrass, Inc.*, No. 15 CV 743

JAP/WPL, 2016 WL 5172820, at *10 (D.N.M. July 29, 2016) (employer's broad anti-harassment policy supported reasonableness of plaintiff's belief that she was opposing unlawful racial harassment).

The court is persuaded that it would be inappropriate to declare as a matter of law, at the pleadings stage, that Johnson's belief that Barnett violated Title VII was unreasonable. As indicated above, Tenth Circuit precedent establishes that an employee may reasonably believe he is opposing unlawful discrimination even if the employer's conduct does not actually violate Title VII. *See Hansen*, 844 F.3d at 926; *Hertz*, 370 F.3d at 1015–16. Johnson correctly points out that *Crumpacker*, *Breeden*, and *Clark* were all decided at the summary judgment stage, after completion of fact discovery. It may turn out at the summary judgment stage or trial stage of this matter that Johnson's belief was unreasonable. At this stage, however, because reasonableness is a fact-intensive and context-specific determination, *see White*, 548 U.S. at 69, and because the court is required to make all reasonable inferences in favor of the Plaintiff, the court cannot declare as a matter of law that no reasonable person in Johnson's place would believe that he was opposing unlawful sexual harassment.

## CONCLUSION AND ORDER

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART Defendants' Motion. Specifically:

1. Defendants' Motion for Judgment on the Pleadings as to the claims against the individual School Board members is GRANTED. All claims against the individual Defendants, whether in their personal or official capacities, are DISMISSED.

2.  The School District's Motion for Judgment on the Pleadings as to the Title VII and ADEA hostile work environment claims is GRANTED. Plaintiff's hostile work environment claims are DISMISSED.

3.  The School District's Motion for Judgment on the Pleadings as to the ADEA retaliation claim is DENIED.

4.  The School District's Motion for Judgment on the Pleadings as to the Title VII retaliation claim is DENIED.


DATED November 3, 2020.

BY THE COURT

Jill N. Parrish
United States District Court Judge

22